FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 14, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFREY R.,[1] | No. 2:20-cv-00228-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 18, 20 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 18, 20. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 18, and grants Defendant's motion, ECF No. 20.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

ORDER - 3

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER - 5

1    The claimant bears the burden of proof at steps one through four above.

2    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

3    step five, the burden shifts to the Commissioner to establish that 1) the claimant is

4    capable of performing other work; and 2) such work "exists in significant numbers

5    in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d

6    386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

8    On October 25, 2016, Plaintiff applied for Title II disability insurance

9    benefits alleging a disability onset date of October 1, 2015.  Tr. 15, 69, 150-51.

10    The application was denied initially and on reconsideration.  Tr. 94-96, 98-100.

11    Plaintiff appeared before an administrative law judge (ALJ) on August 3, 2018.

12    Tr. 28-68.  On November 23, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-27.

13    At step one of the sequential evaluation process, the ALJ found Plaintiff,

14    who met the insured status requirements through December 31, 2020, has not

15    engaged in substantial gainful activity since October 1, 2015.  Tr. 17.  At step two,

16    the ALJ found that Plaintiff has the following severe impairments: major

17    depressive disorder, obstructive sleep apnea with use of CPAP machine,

18    generalized anxiety disorder, PTSD, panic disorder, and drug and alcohol addiction

19    disorder.  *Id*.

20

ORDER - 6

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [Plaintiff] can perform simple repetitive tasks with short, simple instructions. He can have superficial interaction with co-workers and small groups of familiar individuals. He can have superficial contact with the general public, who can be around his vicinity, but this individual can have no interaction with the general public for performing job tasks. He needs a stable, routine job environment. He can do no work at [a] fast production rate. H[e] is off-task up to 10% of the workday.

Tr. 19.

At step four, the ALJ found Plaintiff is capable of performing his past relevant work as a garbage collector and auto detailer. Tr. 23. The ALJ did not make an alternative step five finding. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of October 1, 2016, through the date of the decision. *Id.*

On April 22, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly evaluated the lay opinion evidence;[2]

3. Whether the ALJ properly evaluated Plaintiff's symptom claims;

4. Whether the ALJ conducted a proper step-five analysis; and

5. Whether the ALJ conducted a proper step-three analysis.

ECF No. 18 at 4.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinion of R.A. Cline, Ph.D. ECF No. 18 at 6-13.

---

[2] Plaintiff did not list the ALJ's rejection of the lay opinion evidence as a separate issue, but briefed the issue, ECF No. 18 at 10-11, and Defendant responded regarding the issue, ECF No. 20 at 10-11. Thus, the Court finds the issue sufficiently raised for the Court's consideration.

ORDER - 8

1    Plaintiff generally asserts that the ALJ repeatedly erred in his evaluation of

2    the medical evidence, but does not set forth a specific argument regarding any

3    medical opinions except Dr. Cline's opinion. *Id.* at 6-13. Because Plaintiff failed

4    to develop the arguments regarding other medical opinions with any specificity,

5    the arguments are waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d

6    1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the

7    merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th

8    Cir. 1998) (the Court may not consider on appeal issues not "specifically and

9    distinctly argued" in the party's opening brief).

10    There are three types of physicians: "(1) those who treat the claimant

11    (treating physicians); (2) those who examine but do not treat the claimant

12    (examining physicians); and (3) those who neither examine nor treat the claimant

13    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

14    *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

15    Generally, a treating physician's opinion carries more weight than an examining

16    physician's, and an examining physician's opinion carries more weight than a

17    reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

18    to opinions that are explained than to those that are not, and to the opinions of

19    specialists concerning matters relating to their specialty over that of

20    nonspecialists." *Id.* (citations omitted).

ORDER - 9

1    If a treating or examining physician's opinion is uncontradicted, the ALJ

2    may reject it only by offering "clear and convincing reasons that are supported by

3    substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

4    "However, the ALJ need not accept the opinion of any physician, including a

5    treating physician, if that opinion is brief, conclusory and inadequately supported

6    by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

7    (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

8    examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

9    may only reject it by providing specific and legitimate reasons that are supported

10   by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

11   F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may

12   serve as substantial evidence if it is supported by other independent evidence in the

13   record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

14   On March 16, 2017, Dr. Cline examined Plaintiff and provided an opinion

15   on Plaintiff's psychological functioning. Tr. 351-56. Dr. Cline diagnosed Plaintiff

16   with borderline personality disorder, PTSD, panic disorder, agoraphobia,

17   unspecified depressive disorder (rule out alcohol use related), and severe alcohol

18   use disorder in early reported remission. Tr. 353. Dr. Cline opined Plaintiff's

19   anxiety/panic, mood instability/depressed mood, and trauma-related symptoms are

20   all marked in severity, and his maladaptive personality traits are moderate in

ORDER - 10

severity. *Id.* Dr. Cline opined Plaintiff has no to mild limitations in his ability to understand, remember, and persist in tasks by following very short and simple instructions, learn new tasks, perform routine tasks without special supervision, be aware of normal hazards and take appropriate precautions, and ask simple questions or request assistance; moderate limitations in his ability to understand, remember, and persist in tasks by following detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, make simple work-related decisions, and set realistic goals and plan independently; and marked limitations in his ability to communicate and perform effectively in a work setting, maintaining appropriate behavior in a work setting, and complete a normal workday/workweek without interruptions from psychologically based symptoms. Tr. 354. Dr. Cline further opined Plaintiff's mental impairments overall have a moderate severity rating, and his limitations were expected to last six to 12 months. *Id.* Dr. Cline noted, "[t]he interplay between his alcohol abuse and depression remains somewhat unclear," and as such she did not know if Plaintiff's impairments would persist following 60 days of sobriety. *Id.* The ALJ gave Dr. Cline's opinion little weight. Tr. 22. As Dr. Cline's opinion was contradicted by the opinion of Dr. Forsyth, Tr. 89-90, the ALJ

ORDER - 11

1  was required to give specific and legitimate reasons, supposed by substantial

2  evidence, to reject Dr. Cline's opinion.  *See Bayliss*, 427 F.3d at 1216.

3      First, the ALJ found Dr. Cline did not acknowledge Plaintiff's history of

4  substance use.  Tr. 21-22.  An ALJ may properly reject a medical opinion that is

5  rendered without knowledge of a claimant's substance abuse.  *Cothrell v.*

6  *Berryhill*, 742 F. App'x 232, 236 (9th Cir. July 18, 2018) (unpublished opinion);

7  *Chavez v. Colvin*, No. 3:14-cv-01178-JE, 2016 WL 8731796, at *8 (D. Or. July 25,

8  2016) (unpublished opinion).  The ALJ noted Dr. Cline did not mention Plaintiff's

9  history of polysubstance abuse, nor Plaintiff's potential continued marijuana use.

10  Tr. 21-22.  While Dr. Cline diagnosed Plaintiff with alcohol use disorder, she did

11  not diagnose any other substance use disorder despite Plaintiff having used

12  marijuana more recently than alcohol, and his reported history of use of multiple

13  other substances, Tr. 352-53.  Dr. Cline noted Plaintiff has a history of alcohol,

14  marijuana, mushroom, opiate medication, and methamphetamine use, including

15  marijuana use one month prior to the examination, and alcohol use four months

16  prior to the examination. Tr. 352.  Plaintiff reported his longest period of sobriety

17  was when he maintained a year-long period following treatment.  *Id.*  Dr. Cline

18  noted it was difficult to clearly diagnose major depressive disorder due to

19  Plaintiff's recent heavy alcohol use, Tr. 353, and stated the interplay between

20  Plaintiff's alcohol use and depression was unclear, Tr. 354.  Dr. Cline did not

ORDER - 12

1  address if Plaintiff's history of substance use, nor his recent marijuana use,

2  impacted her opinion.  Plaintiff observed Dr. Cline did not comment on Plaintiff's

3  drug or alcohol use related to his PTSD, panic disorder or agoraphobia.  ECF No.

4  18 at 12.  This was a specific and legitimate reason, supported by substantial

5  evidence, to reject Dr. Cline's opinion.

6          Second, the ALJ found Dr. Cline's opinion indicated the limitations would

7  not be permanent with treatment.  Tr. 22.  Temporary limitations are not enough to

8  meet the durational requirement for a finding of disability.  20 C.F.R. §

9  404.1505(a); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165

10 (affirming the ALJ's finding that treating physicians' short-term excuse from work

11 was not indicative of "claimant's long-term functioning").  To be disabled, an

12 impairment must be expected to last for a continuous period of at least 12 months.

13 *See* 20 C.F.R. § 404.1509.  Here, Dr. Cline opined that with available treatment,

14 Plaintiff would be impaired for six to 12 months.  Tr. 354.  However, Dr. Cline

15 also noted Plaintiff's impairments may not persist following 60 days of sobriety, as

16 the interplay between his alcohol use and depression was somewhat unclear.  Tr.

17 354.  Any error in in finding Dr. Cline's opinion did not meet the duration

18 requirement is harmless because the ALJ provided other specific and legitimate

19 reasons, supported by substantial evidence, to discount Dr. Cline's opinion.  *See*

20 *Molina,* 674 F.3d at 1115.

ORDER - 13

Lastly, the ALJ found Dr. Cline's opinion was inconsistent with Plaintiff's improvement with treatment. Tr. 22. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). After Dr. Cline rendered her opinion in March 2017, Plaintiff had ongoing mental health treatment. Tr. 22 (citing Tr. 583-624). The ALJ observed that in April 2017, Plaintiff reported having two good friends, riding motorcycles, fishing, and camping. Tr. 20 (citing Tr. 584). Plaintiff's April 2017 mental status examination contained some abnormalities, including distractible attention and poor recent memory, but Plaintiff otherwise had a normal examination. Tr. 583. In July 2017, Plaintiff reported going camping, and was observed as oriented, with a euthymic mood, intact functional status, appropriate affect, and he was interactive. Tr. 599. In November 2017, Dr. Greer noted Plaintiff appeared to be doing well, and his anxiety was under better control with new medications, although he was still having occasional panic attacks. Tr. 20 (citing Tr. 607). In May 2018, Plaintiff had a fairly stable week with his mood and anxiety, he reported sleeping well and reported his son keeps him busy during the day and evening, and he reported he cares for his son during the day because his fiancée is gone long hours; he was observed as alert, oriented, with normal functional status. Tr. 621. This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Cline's opinion.

ORDER - 14

1

**B. Lay Opinion Evidence**

2       Plaintiff contends the ALJ erred in his consideration of Ms. Wright's

3   statement.  ECF No. 18 at 10-11.  An ALJ must consider the statement of lay

4   witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc.*

5   *Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness evidence cannot

6   establish the existence of medically determinable impairments, but lay witness

7   evidence is "competent evidence" as to "how an impairment affects [a claimant's]

8   ability to work."  *Id.*; 20 C.F.R. § 404.1513; *see also Dodrill v. Shalala*, 12 F.3d

9   915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to

10  observe a claimant's symptoms and daily activities are competent to testify as to

11  her condition.").  If a lay witness statement is rejected, the ALJ "'must give

12  reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462,

13  1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

14      On October 31, 2016, Ms. Wright completed a questionnaire regarding

15  Plaintiff's functioning.  Tr. 174-81.  Ms. Wright stated Plaintiff's anxiety at times

16  prevents him from leaving the house, he has been hospitalized multiple times for

17  panic attacks, he helps care for their son and dogs though Ms. Wright handles most

18  of the care, his symptoms vary between "good days" and "bad days," and on bad

19  days he will not change his clothes, bathe, care for his hair, or shave, and he

20  requires reminders to perform personal care, he can prepare several meals per week

1    with encouragement, he can drive and go out alone, he can handle money, he

2    works on cars and goes hiking only when he is feeling good, he works on cars with

3    a friend a couple times per week and visits his stepdad a few times per month, he

4    does not have issues getting along with others, but he has trouble with his memory,

5    concentration, completing tasks, following instructions, and handling stress. *Id.*

6    The ALJ gave Ms. Wright's opinion little weight. Tr. 23. As Ms. Wright is a lay

7    witness, the ALJ was required to give germane reasons to reject the statement. *See*

8    *Nguyen*, 100 F.3d at 1467.

9        The ALJ found Ms. Wright's opinion was inconsistent with her own report

10   of Plaintiff's activities of daily living. Tr. 22-23. Inconsistency with a claimant's

11   daily activities is a germane reason to reject lay testimony. *Carmickle*, 533 F.3d at

12   1163-64; *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ noted that

13   while Ms. Wright reported Plaintiff had severe limitations, she also reported

14   Plaintiff was able to leave the home daily by driving or riding in a car, and was

15   able to shop. Tr. 22-23. The ALJ discussed Plaintiff's other activities earlier in

16   the decision, and noted Plaintiff engaged in camping, boating, fishing, riding

17   motorcycles, spending time with two friends, and maintaining a romantic

18   relationship. Tr. 20-21. Plaintiff alleges the record does not indicate how

19   frequently he engages in the activities. ECF No. 18 at 9. However, Ms. Wright

20   indicated Plaintiff engaged in social activities multiple times per week, leaves his

ORDER - 16

1  home almost every day, shops a few times per month, and prepares meals several

2  times per week.  Tr. 175-78.  While Ms. Wright indicated Plaintiff has "good days"

3  and "bad days," Plaintiff's ability to engage in multiple activities outside of his

4  home on a regular basis is inconsistent with her reports of Plaintiff's disabling

5  limitations and inability to consistently leave his home.  This was a germane

6  reason to reject Ms. Wright's statements.  Plaintiff is not entitled to remand on

7  these grounds.

8  **C. Plaintiff's Symptom Claims**

9          Plaintiff faults the ALJ for failing to rely on reasons that were clear and

10  convincing in discrediting his symptom claims.  ECF No. 18 at 13-14.  An ALJ

11  engages in a two-step analysis to determine whether to discount a claimant's

12  testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

13  "First, the ALJ must determine whether there is objective medical evidence of an

14  underlying impairment which could reasonably be expected to produce the pain or

15  other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

16  "The claimant is not required to show that [the claimant's] impairment could

17  reasonably be expected to cause the severity of the symptom [the claimant] has

18  alleged; [the claimant] need only show that it could reasonably have caused some

19  degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

20

ORDER - 17

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

5    omitted).  General findings are insufficient; rather, the ALJ must identify what

6    symptom claims are being discounted and what evidence undermines these claims.

7    *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

8    Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

9    symptom claims)).  "The clear and convincing [evidence] standard is the most

10    demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

11    1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

12    924 (9th Cir. 2002)).

13        Factors to be considered in evaluating the intensity, persistence, and limiting

14    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

15    duration, frequency, and intensity of pain or other symptoms; 3) factors that

16    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

17    side effects of any medication an individual takes or has taken to alleviate pain or

18    other symptoms; 5) treatment, other than medication, an individual receives or has

19    received for relief of pain or other symptoms; 6) any measures other than treatment

20    an individual uses or has used to relieve pain or other symptoms; and 7) any other

ORDER - 18

1  factors concerning an individual's functional limitations and restrictions due to

2  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

3  404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

4  individual's record," to "determine how symptoms limit ability to perform work-

5  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

6        The ALJ found that Plaintiff's medically determinable impairments could

7  reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

8  statements concerning the intensity, persistence, and limiting effects of his

9  symptoms were not entirely consistent with the evidence.  Tr. 19.

10        1.  *Inconsistent Objective Medical Evidence*

11        The ALJ found Plaintiff's symptom claims are inconsistent with the

12  objective medical evidence.  Tr. 20-21.  An ALJ may not discredit a claimant's

13  symptom testimony and deny benefits solely because the degree of the symptoms

14  alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

15  F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

16  1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400

17  F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a

18  relevant factor, along with the medical source's information about the claimant's

19

20

ORDER - 19

1  pain or other symptoms, in determining the severity of a claimant's symptoms and

2  their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

3      The ALJ found Plaintiff's symptom complaints are inconsistent with the

4  medical records, which contain many generally normal mental findings.  Tr. 20.  In

5  February 2016, Plaintiff was noted as having normal insight, judgment, mood,

6  affect, orientation, and memory.  *Id.* (citing Tr. 387).  In March 2017, Plaintiff was

7  cooperative, calm, and pleasant, with normal eye contact, speech, thoughts,

8  orientation, memory, insight, judgment, thoughts, and mood, though he had an

9  anxious affect.  Tr. 20 (citing Tr. 359).  In February 2018, Plaintiff had a normal

10 assessment.  Tr. 20 (citing Tr. 609).  The medical records contain numerous largely

11 normal mental status findings.  *See, e.g.,* Tr. 369, 378, 380-81, 383.  There are

12 some examinations containing abnormalities, including fair insight, poor recent

13 memory, and distractible attention/concentration, Tr. 583, and anxious mood,

14 abnormal thoughts, some memory impairments, and abnormal abstract thought, Tr.

15 355-56, however even during the examinations containing some abnormal

16 findings, Plaintiff's examinations were otherwise normal.  Dr. Greer noted she

17 discussed working with Plaintiff, but Plaintiff wanted to wait to see if he would be

18 receiving disability benefits because working would interfere with his ability to

19 obtain benefits, Tr. 22, 606, and she suggested Plaintiff pursue services from

20 division of vocational rehabilitation to help Plaintiff find work, but Plaintiff

ORDER - 20

declined, Tr. 606, 610.  Plaintiff reported he wants to work in the future but felt he could not presently.  Tr. 610.

Plaintiff argues the medical evidence is consistent with his claims, as the records document Plaintiff reported feeling anxious, being unable to return to work, and his reports that he had ongoing symptoms of panic attacks and depression.  ECF No. 18 at 13-14.  Plaintiff's argument largely relies on his own self-report of his symptoms; the cited records contain Plaintiff's report of his symptoms to medical providers, rather than objective documentation of his symptoms and limitations.  *See* Tr. 269-70, 311-12.  Plaintiff also argues the statement of his fiancée is consistent with his symptom claims, however a lay witness statement does not provide objective medical evidence to support his claims.  *See* ECF No. 18 at 14.  Plaintiff further argues the ALJ inflated Dr. Greer's notes, and the notes reflected only Dr. Greer's hope that Plaintiff could work.  *Id.* at 8.  However, Dr. Greer's notes contained Plaintiff's own statements that he was not pursuing work so he could pursue disability benefits, and Dr. Greer's repeated suggestions that Plaintiff pursue assistance obtaining work indicates a belief that Plaintiff is able to work.  Tr.  606, 609-10.

While Plaintiff's symptoms naturally waxed and waned, the ALJ's finding that the relatively benign objective findings were out of proportion with and did not corroborate Plaintiff's report of severe mental limitations is reasonable.  This

1   was a clear and convincing reason, along with the other reasons offered, to

2   discount Plaintiff's symptom reports.

3          *2. Improvement with Treatment*

4          The ALJ found Plaintiff's symptom claims are inconsistent with Plaintiff's

5   improvement with treatment.  Tr. 20.  The effectiveness of treatment is a relevant

6   factor in determining the severity of a claimant's symptoms.  20 C.F.R. §

7   404.1529(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

8   (9th Cir. 2006) (determining that conditions effectively controlled with medication

9   are not disabling for purposes of determining eligibility for benefits); *Tommasetti*

10  *v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable

11  response to treatment can undermine a claimant's complaints of debilitating pain or

12  other severe limitations).

13         The ALJ noted Plaintiff's mental health symptoms improved with

14  medication, which was inconsistent with Plaintiff's reported limitations.  Tr. 20.  In

15  April 2017, Plaintiff reported having two good friends, riding motorcycles, fishing,

16  and camping.  *Id.* (citing Tr. 584).  In November 2017, Dr. Greer noted Plaintiff

17  appeared to be doing well, and his anxiety was under better control with new

18  medications, although he was still having occasional panic attacks.  Tr. 20 (citing

19  Tr. 607).  As discussed *supra,* despite some abnormalities in the records, Plaintiff

20  had numerous generally normal mental status examinations.

ORDER - 22

On this record, the ALJ reasonably concluded that Plaintiff's impairments when treated were not as limiting as Plaintiff claimed. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

### 3. Activities of Daily Living

The ALJ found Plaintiff's symptom claims are inconsistent with Plaintiff's activities of daily living. Tr. 20-21. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ noted Plaintiff's activities are inconsistent with his reported difficulty leaving the house and frequent anxiety. Tr. 20-21. Plaintiff reported camping, boating, fishing, and maintaining two friendships and a romantic relationship. *Id.* Plaintiff's fiancée reported Plaintiff visits his friends and

stepfather, leaves the home almost daily, and is able to shop.  Tr. 22-23.  Plaintiff

argues there is not documentation of the frequency of his activities, ECF No. 18 at

9-10, but as discussed *supra,* Ms. Wright indicated the frequency of several of the

activities.  Plaintiff argues he had anxiety during the activities, and his activities

are not inconsistent with his allegations.  *Id.*  However, there are multiple notes

documenting Plaintiff reporting engaging in camping, hunting, fishing, and

boating.  Tr. 55, 515, 584, 599, 607.  While Plaintiff argues the activities are not

transferrable to work activity, ECF No. 18 at 9, 11, the activities undermine

Plaintiff's allegations that he is often unable to leave his home.

On this record, the ALJ reasonably concluded that Plaintiff's activities of

daily living are inconsistent with his allegations.  This finding is supported by

substantial evidence and was a clear and convincing reason to discount Plaintiff's

symptom complaints.

*4.  Substance Use*

The ALJ found Plaintiff made inconsistent statements about his substance

use.  Tr. 21.  Inconsistent statements about drug use are appropriate grounds for the

ALJ to discount a claimant's reported symptoms.  *Thomas*, 278 F.3d at 959;

*Edlund*, 253 F.3d at 1157; *Gray v. Comm'r, of Soc. Sec.*, 365 F. App'x 60, 63 (9th

Cir. 2010); *Lewis v. Astrue*, 238 F. App'x 300, 302 (9th Cir. 2007); *Morton v.

Astrue*, 232 F. App'x 718, 719 (9th Cir. 2007).  At his hearing, Plaintiff testified he

ORDER - 24

had not been consuming any substances.  Tr. 21, 43.  Plaintiff stated he could not

recall the last time he consumed alcohol, but stated his attorney had told him the

medical records indicated his last use was October of 2017, and he did not have

any other recollection.  Tr. 51.  Plaintiff also testified he could not recall the last

time he used marijuana.  *Id.*  Plaintiff reported he first tried to stop drinking alcohol

in 2015, but he began drinking alcohol again multiple times per week before

stopping again and he had not drank since the last time he stopped.  Tr. 52-53.

Plaintiff's records indicate continued alcohol consumption in November 2017 and

marijuana use in February 2017.  Tr. 351, 467, 515.

Plaintiff contends the ALJ improperly speculated as to the significance of

Plaintiff's substance use on his ability to function.  ECF No. 18 at 11-12.  Plaintiff

argues the ALJ should not have considered Plaintiff's substance use, as he did not

find Plaintiff disabled.  *Id.*  When there is medical evidence of drug or alcohol

addiction (DAA), the ALJ must determine whether the drug or alcohol addiction is

a material factor contributing to the disability.  20 C.F.R. § 404.1535(a).  In order

to determine whether drug or alcohol addiction is a material factor contributing to

the disability, the ALJ must evaluate which of the current physical and mental

limitations would remain if the claimant stopped using drugs or alcohol, then

determine whether any or all of  the remaining limitations would be disabling.  20

C.F.R. § 404.1535(b)(2).  If the remaining limitations would not be disabling, drug

ORDER - 25

1   or alcohol addiction is a contributing factor material to the determination of

2   disability.  *Id.*  If the remaining limitations would be disabling, the claimant is

3   disabled independent of the drug or alcohol addiction and the addiction is not a

4   contributing factor material to disability.  *Id.*  The claimant has the burden of

5   showing that drug and alcohol addiction is not a contributing factor material to

6   disability.  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2008).

7          The ALJ found there was not clear evidence of substance abuse that allowed

8   for a materiality analysis.  Tr. 21.  The ALJ then stated that even during a period

9   sobriety, Plaintiff's substance use before and after the sober period could

10  reasonably have depressed Plaintiff's functioning.  *Id.*  Plaintiff argues the ALJ

11  erred in his analysis as his substance use is not material to his disability.  ECF No.

12  18 at 12.  However, the ALJ found there was not sufficient evidence to make a

13  materiality determination.  Tr. 21.  Any error in the ALJ's analysis of Plaintiff's

14  substance use is harmless, as the ALJ found Plaintiff's use was not material, and he

15  gave other clear and convincing reasons, supported by substantial evidence, to

16  reject Plaintiff's symptom claims.  *See Molina,* 674 F.3d at 1115.

17        *5.  Situational Stressors*

18        The ALJ found Plaintiff's exacerbation of his anxiety-related symptoms was

19  attributable to situational stress.  Tr. 21.  If a claimant suffers from limitations that

20  are transient and result from situational stressors, as opposed to resulting from a

medical impairment, an ALJ may properly consider this fact in discounting

Plaintiff's symptom claims.  *See Chesler v. Colvin*, 649 F. App'x 631, 632 (9th

Cir. 2016) (symptom testimony properly rejected in part because "the record

support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were

situational"); *but see Bryant v. Astrue*, No. C12-5040-RSM-JPD, 2012 WL

5293018, at *5–7 (W.D. Wash. Sept. 24, 2012) (concluding Plaintiff's stressors

appeared to have a constant presence affecting ability to work on a continuing

basis, rather than temporary exacerbation).

      The ALJ noted some of Plaintiff's mental health symptoms were attributable

to situational stress.  Tr. 21.  Dr. Greer attributed Plaintiff's anxiety to an ongoing

legal proceeding, and noted Plaintiff was aware some of his stress would be

alleviated after the proceeding was complete.  *Id.* (citing Tr. 614).  The medical

records indicate in November 2016 Plaintiff was dealing with financial issues,

legal issues, housing issues, and issues with his sobriety, among other issues.  Tr.

373.  On this record, the ALJ reasonably concluded that Plaintiff's symptoms were

in part attributable to situational stressors.  This finding is supported by substantial

evidence and was a clear and convincing reason to discount Plaintiff's symptom

complaints.  Plaintiff is not entitled to remand on these grounds.

ORDER - 27

1    **D. Step Five**

2    Plaintiff contends the ALJ erred at step five.  ECF No. 18 at 14-18.  At step

3    five of the sequential evaluation analysis, the burden shifts to the Commissioner to

4    establish that 1) the claimant can perform other work, and 2) such work "exists in

5    significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2);

6    *Beltran*, 700 F.3d at 389.  In assessing whether there is work available, the ALJ

7    must rely on complete hypotheticals posed to a vocational expert.  *Nguyen*, 100

8    F.3d at 1467.  The ALJ's hypothetical must be based on medical assumptions

9    supported by substantial evidence in the record that reflects all of the claimant's

10    limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The

11    hypothetical should be "accurate, detailed, and supported by the medical record."

12    *Tackett*, 180 F.3d at 1101.

13    The hypothetical that ultimately serves as the basis for the ALJ's

14    determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

15    assessment, must account for all the limitations and restrictions of the claimant.

16    *Bray*, 554 F.3d at 1228.  As discussed above, the ALJ's RFC need only include

17    those limitations found credible and supported by substantial evidence.  *Bayliss*,

18    427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of

19    the limitations that the ALJ found credible and supported by substantial evidence

20    in the record.").  "If an ALJ's hypothetical does not reflect all of the claimant's

ORDER - 28

limitations, then the expert's testimony has no evidentiary value to support a

finding that the claimant can perform jobs in the national economy." *Id*.  However,

the ALJ "is free to accept or reject restrictions in a hypothetical question that are

not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973

(9th Cir. 2006).  Therefore, the ALJ is not bound to accept as true the restrictions

presented in a hypothetical question propounded by a claimant's counsel if they are

not supported by substantial evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 756-

57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  A

claimant fails to establish that a step five determination is flawed by simply

restating argument that the ALJ improperly discounted certain evidence, when the

record demonstrates the evidence was properly rejected.  *Stubbs-Danielson v.*

*Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2006).

Plaintiff's argument is based entirely on the assumption that the ALJ erred in

considering the opinion evidence and Plaintiff's symptom claims.  For the reasons

discussed throughout this decision, the ALJ's consideration of Plaintiff's symptom

claims and consideration of the medical opinion evidence are legally sufficient and

supported by substantial evidence.  Thus, the ALJ did not err in assessing the RFC

or finding Plaintiff capable of performing work existing in the national economy.

ORDER - 29

**E. Step Three**

Plaintiff contends the ALJ erred at step three by finding that Plaintiff's impairments did not meet Listing 12.06.  ECF No. 18 at 18-19.  At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii).  The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. § 404.1525.  "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.' " *Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered."  *Kennedy*, 758 F.3d at 1176.  If a claimant meets the listed criteria for disability, he will be found to be disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."  *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1525(d).  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory

1  findings 'at least equal in severity and duration' to the characteristics of a relevant

2  listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting

3  20 C.F.R. § 404.1526(a)).  "If a claimant suffers from multiple impairments and

4  none of them individually meets or equals a listed impairment, the collective

5  symptoms, signs and laboratory findings of all of the claimant's impairments will

6  be evaluated to determine whether they meet or equal the characteristics of any

7  relevant listed impairment." *Tackett*, 180 F.3d at 1099.  However, " '[m]edical

8  equivalence must be based on medical findings," and "[a] generalized assertion of

9  functional problems is not enough to establish disability at step three.' " *Id*. at

10  1100 (quoting 20 C.F.R. § 404.1526(a)).

11    The claimant bears the burden of establishing his impairment (or

12  combination of impairments) meets or equals the criteria of a listed impairments.

13  *Burch*, 400 F.3d at 683.  "An adjudicator's articulation of the reason(s) why the

14  individual is or is not disabled at a later step in the sequential evaluation process

15  will provide rationale that is sufficient for a subsequent reviewer or court to

16  determine the basis for the finding about medical equivalence at step 3."  Social

17  Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27,

18  2017).

19    Here, the ALJ found that Plaintiff's impairments and combinations of

20  impairments did not meet or equal any listings, including Listing 12.06.  Tr. 18.

ORDER - 31

To meet Listing 12.06, the claimant must satisfy the criteria of both the Paragraph A and Paragraph B criteria, or Paragraph A and C criteria of the listing.  20 C.F.R. § 404, Appendix 1 to Subpt. P, Listing 12.06.  The Paragraph A criteria requires medical documentation of anxiety disorder characterized by three or more of the following: restlessness, easy fatiguability, difficulty concentrating, irritability, muscle tension, or sleep disturbance; panic disorder or agoraphobic characterized one or more of the following: panic attacks followed by a persistent concern or worry about additional panic attacks or other consequences, or disproportionate fear or anxiety about at least two different situations; or obsessive-compulsive disorder characterized by one or more of the following: involuntary, time-consuming preoccupation with intrusive, unwanted thoughts, or repetitive behaviors aimed at reducing anxiety.  *Id.*  The Paragraph B criteria is met if the impairment results in an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist or maintain pace; or adapt or manage oneself.  *Id.*  The Paragraph C criteria requires the impairment is "serious and persistent," meaning there is a medically documented history of the existence of the impairment over a period of at least two years, and there is evidence of both: medical treatment, therapy, psychosocial support, or a highly structured setting that is ongoing and diminishes the symptoms/signs of the mental impairment; and

marginal adjustment, meaning the claimant has minimal capacity to adapt to changes in their environment or to demands that are not already part of their daily life. *Id.*

Plaintiff contends he meets Listing 12.06 based on Dr. Cline's opinion, as Dr. Cline opined Plaintiff has multiple marked limitations. ECF No. 18 at 18-19. Plaintiff does not present an argument as to which Paragraph A criteria he meets, nor which two Paragraph B criteria he meets, and Plaintiff does not address the Paragraph C criteria. Plaintiff does not cite to any evidence to support his argument except Dr. Cline's opinion. As the ALJ's rejection of Dr. Cline's opinion was supported by substantial evidence, as discussed *supra*, and Plaintiff has not presented any other argument or evidence beyond Dr. Cline's opinion, Plaintiff has not met his burden in demonstrating he meets Listing 12.06. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

ORDER - 33

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED April 14, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 34